James S. Davis CALBAR NO.207963
Email: Jamesdee3080@msn.com
James S. Davis Attorney at Law
730 Broadway, Suite 102
Chula Vista CA 91910
(619) 934-4600
Of Counsel for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DALLAS BUYERS CLUB, LLC**, a Texas Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>**DOE-50.76.49.97,**<br><br>Defendant. | Case No.: Click here to enter text.<br><br>COMPLAINT,<br>EXHIBIT 1<br><br>COPYRIGHT INFRINGEMENT<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Dallas Buyers Club, LLC ("DBC") complains and alleges as follows:

### JURISDICTION AND VENUE

1.     This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq.

("The Copyright Act").

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant is believed to reside in this district.

<u>PARTIES</u>

PLAINTIFF

4.     Plaintiff DBC is Texas Limited Liability Company and the registered copyright holder of the motion picture *Dallas Buyers Club.*

The Rights of DBC

5.     *Dallas Buyers Club* is an acclaimed motion picture nominated for six Academy Awards (Oscars), winning Best Actor, Best Supporting Actor, and Best Makeup. Plaintiffs' motion picture also won numerous Screen Actors Guild Awards, Golden Globes and other awards.

6.     *Dallas Buyers Club* has been registered with the United States Copyright Office by the owner, DBC, Registration No. PA 1-873-195, 2013

7.     Under The Copyright Act, DBC is the proprietor of all copyrights and interests needed to bring suit.

8.     The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

9.     The motion picture is currently offered for sale in commerce.

COMPLAINT                                                                 Page 2 of 10

10.     Defendant had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and all packaging and copies, each of which bore a proper copyright notice.

11.     Plaintiff comes to court seeking relief as the motion picture *Dallas Buyers Club* is the subject of significant piracy and has been illegally downloaded and distributed countless times worldwide with tens of thousands of confirmed instances of infringing activity traced to California.

THE DEFENDANT

12.     The defendant identified herein as DOE- **50.76.49.97** is currently known only by their Internet Protocol ("IP") Address **50.76.49.97** which on over 400 occasions, between 8/9/2015 at 08:00:00(UST) and 11/27/2015 at 08:43:00(UST), was observed through direct TCP/IP connection as infringing the motion picture *Dallas Buyers Club*.

13.     A list of instances of observed infringing activity of plaintiff's motion picture is submitted as Exhibit 1.

14.     Through well accepted geolocation technology each and every direct TCP/IP connection made to IP address **50.76.49.97** confirming infringement has been traced to the State of California and this District.

COMPLAINT                                                                Page 3 of 10

15.     Each and every direct TCP/IP connection to the defendant's computer, in addition to being geolocated to this District, has also confirmed the defendant was distributing the exact same distinct copy of plaintiff's motion picture as identified by hash:  F18A60DB02EC3B55C18924F47955DE766DACC537.

16.     Each and every direct TCP/IP connection to the defendant's computer has also confirmed the defendant was utilizing the same client software to distribute plaintiff's motion picture, namely: Azureus 5.3.0.

17.     The defendant's IP address has been observed as associated with the peer-to-peer exchange of a large number of copyrighted titles through the BitTorrent network.

18.     The volume of the activity associated with the defendant's IP address indicates that anyone actively using or observing activity on the IP address would likely be aware of the conduct of the defendant.

19.     The volume and titles of the activity associated with the defendant's IP address indicates that the defendant is not a young child, but an adult.

20.     The consistency of observed activity and volume and titles associated with the defendant's IP address indicates that the defendant is an identifiable and singular person and likely the primary subscriber of the IP address or someone who resides with the subscriber and is known to the subscriber, as such activity

COMPLAINT                                                          Page 4 of 10

indicates the defendant is an authorized user of the IP address with consistent and permissive access.

21.     The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast Business Communications, who on information and belief, generally assigns an IP address to a single party for extended periods of time.

22.     The records maintained by Comcast Business Communications should be able to identify either the defendant, or the subscriber who contracted with Comcast Business Communications for service who in turn is likely to have knowledge that will lead to the identity of the defendant.

23.     Plaintiff intends to seek initial discovery to subpoena records from Comcast Business Communications to ascertain the true identity of the subscriber and further information about the defendant.

<u>BACKGROUND</u>

PEER-TO-PEER INTERNET PIRACY

24.     Digital piracy, including BitTorrent piracy, costs the entertainment industry over $70 billion per year.

25.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent

sites and networks generate millions of dollars in revenue through sales and advertising.

26.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks.  To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

27.     Defendant's participation in the BitTorrent exchange of plaintiff's motion picture is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

28.     Many parties, and possibly defendant have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie, even if such compensation was limited to greater access to other content.

29.     The use of BitTorrent does more than cause harm through the simple theft of intellectual property.  The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

COMPLAINT

30.     Based on activity observed associated with defendant's IP address, defendant is a prolific proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

31.     As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

32.   In California the entertainment industry employs hundreds of thousands of people directly and indirectly and is a significant part of the state's economy. However piracy, such as that of the defendant and others working with the defendant cost the entertainment industry billions and countless additional jobs.

33.   With the known threat and impact of piracy on the State of California, and in particular the threat and damage of piracy through means such as peer-to-peer and BitTorrent piracy, the State of California has enacted Cal. Pen. Code § 653aa,

COMPLAINT                                                      Page 7 of 10

which can punish the BitTorrent distribution of any commercial work to more than 10 people by a fine of up to $5,000 and up to a year in jail.

34.     As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to both the United States of America and the State of California.


## FIRST CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT

35.     Defendant, without the permission or consent of DBC, copied and distributed plaintiff's motion picture through a public BitTorrent network.

36.     Defendant's actions infringed DBC's exclusive rights under The Copyright Act.

37.     Defendant's conduct has been willful, intentional, in disregard of and indifferent to DBC's rights.

38.     As a direct and proximate result of defendant's conduct, DBC's exclusive rights under 17 U.S.C. § 106 have been violated.

39.     DBC is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

COMPLAINT                                                    Page 8 of 10

40.    The conduct of the defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

41.    Pursuant to 17 U.S.C. §§ 502 and 503, DBC is entitled to injunctive relief prohibiting the defendant from further contributing to the infringement of DBC copyrights and ordering that defendant destroy all copies of the motion picture made in violation of DBC rights.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant as follows:

A.    For entry of permanent injunction enjoining defendant from directly, indirectly or contributory infringing plaintiff's rights, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff.  And further directing defendant to destroy all unauthorized copies of plaintiff's motion picture;

B.    Statutory damages pursuant to 17 U.S.C. § 504.

C.    For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

D.    For such other and further relief as the Court deems proper.

COMPLAINT                                                    Page 9 of 10

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff

demands a trial by jury.

DATED: December 3, 2015

Respectfully submitted,

JAMES S. DAVIS ATTORNEY AT LAW

/s/James S. Davis
James S. Davis CALBAR NO.207963
Jamesdee3080@msn.com
619-934-4600
Of attorneys for the plaintiff